# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

v.

## Anthony A. KOWALSKI
### Fireman (E-3), U.S. Coast Guard

## CGCMG 0265

## Docket No. 1330

## 15 December 2010

General Court-Martial convened by Commander, Maintenance and Logistics Command Pacific. Tried at Alameda, California, on 17-18 February 2009.

| | |
|---|---|
| Military Judge: | CAPT Gary E. Felicetti, USCG |
| Trial Counsel: | LT Jowcol I. Viña, USCGR |
| Assistant Trial Counsel: | LT Gregory J. Knoll, USCGR |
| Civilian Defense Counsel: | Mr. David M. Brahms |
| Detailed Defense Counsel: | LT Trevor J. Grant, JAGC, USN |
| Appellate Defense Counsel: | LT Kelley L. Tiffany, USCGR |
| Appellate Government Counsel: | LT Herbert C. Pell, USCGR |

### BEFORE
### McCLELLAND, LODGE & TOUSLEY
Appellate Military Judges

McCLELLAND, Chief Judge:

Appellant was tried by general court-martial, military judge alone. Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of one specification of attempting to communicate indecent language to minors, in violation of Article 80, Uniform Code of Military Justice (UCMJ); and four specifications of violating 18 U.S.C. § 2251 by enticing or attempting to entice a minor to produce child pornography, two specifications of violating 18 U.S.C. § 2252A by possessing child pornography, three specifications of violating 18 U.S.C. § 2422(b) by attempting to engage a minor in illegal sexual activity, and one specification of communicating indecent language, all in violation of Article 134, UCMJ. The military judge sentenced Appellant to confinement for sixty-five months,

reduction to E-1, and a dishonorable discharge.  The Convening Authority approved the sentence, but suspended confinement in excess of thirty months for twelve months after release from confinement, pursuant to the pretrial agreement.

Before this court, Appellant has assigned the following errors:

I. Appellant's pleas of guilty to specifications 30, 31 and 32 to Charge II were improvident since the preemption doctrine applies to these specifications.

II. Appellant's pleas of guilty to specifications 31 and 32 to Charge II were improvident because the military judge failed to establish a substantial basis in law and fact that Appellant took a substantial step to attempt at enticement or persuasion as to the underlying crimes of sodomy and carnal knowledge.

III. Appellant's pleas of guilty to specification 30 to Charge II were improvident because the military judge provided conflicting instruction as to the law so that Appellant did not understand what he was pleading guilty to.

IV. This court should consider the unreasonable and unexplained post-trial delay in determining the sentence that should be approved under Article 66(c).

We affirm the findings, and we grant some sentence relief on account of post-trial delay.

**Preemption**

Appellant argues that his convictions of three specifications under Article 134, UCMJ, alleging that he violated 18 U.S.C. § 2422(b) are prohibited by the preemption doctrine, because they could have been charged as attempts under Article 80, UCMJ.  This is a question of law, which we review *de novo*.

Manual for Courts-Martial (MCM), United States (2005 ed.),[1] Pt IV, ¶ 60c(5)(a) explains, "The preemption doctrine prohibits application of Article 134 to conduct covered by Articles 80 through 132."  It goes on to provide as an example the fact pattern of *United States v. Norris*, 2 USCMA 236, 8 C.M.R. 36 (1953).  In *Norris*, the Court of Military Appeals reversed a conviction of "wrongful taking" under Article 134, a putative offense resembling larceny or wrongful appropriation but lacking any requirement of specific intent.  That holding proceeded

---

[1] All of Appellant's convictions were for conduct that occurred in 2005 and 2006.  The provisions of the MCM cited herein are identical in the 2005 and 2008 editions.

from a finding, upon examination of legislative history, "that Congress has, in Article 121, covered the entire field of criminal conversion for military law," *id.* at 39, precluding a "wrongful taking" offense under Article 134. Later cases made clear that the preemption limitation depends on a showing of legislative intent to cover a class of offenses in a complete way, as well as a showing that the offense alleged under Article 134 is composed of a residuum of elements of an offense under another article. *United States v. Maze*, 21 USCMA 260, 45 C.M.R. 34, 36-37 (1972); *United States v. Wright*, 5 M.J. 106, 110-11 (C.M.A. 1978).

18 U.S.C. § 2422(b) provides in pertinent part:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in . . . any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned . . .

The three specifications at issue were in the following form:

> . . . did, at or near [location], [date range], using the Internet, a means of interstate commerce, knowingly attempt to persuade and entice [an identified individual], whom the said FN Kowalski believed to be a [minor], to engage in sexual activity for which a person may be charged with a criminal offense, to wit: Article [125 or 120] of the Uniform Code of Military Justice, in violation of Title 18, United States Code § 2422(b), such conduct being prejudicial to good order and discipline in the armed forces or of a nature to bring discredit upon the armed forces.

In two instances, the crime "for which a person may be charged" was sodomy under Article 125 (specifications 30 and 32), and in the third instance, the crime was carnal knowledge under Article 120,[2] as he believed the individual was a 14-year-old girl (specification 31).

Appellant's arguments that Congress intended prosecutions for sodomy and carnal knowledge to be limited to Articles 125 and 120, or attempts thereof to be limited to Article 80, consist of bare assertions and are wholly without foundation. Furthermore, the offenses as charged are not composed of a residuum of elements of an offense under another article. On the

---

[2] This was Article 120 as it stood in 2006.

contrary, they have an obvious additional element: use of a means of interstate commerce. The doctrine of preemption has no application to this case.

### Providence of two pleas to 18 U.S.C. § 2422(b)

Appellant pleaded guilty to two specifications under Article 134, UCMJ, of attempting to persuade and entice a minor Internet chat partner to engage in illegal sexual activities with him, in violation of 18 U.S.C. § 2422(b). He now argues that the pleas were improvident because the providence inquiry did not establish that he took a substantial step toward persuading or enticing the minor identified in each specification.

The legal standard for determining whether a guilty plea is provident is whether the record presents a substantial basis in law or fact for questioning it. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). The record must contain a sufficient factual basis to support the plea. MCM, Rule for Courts-Martial (R.C.M.) 910(e). The accused must believe and admit every element of the offense. *United States v. Whiteside*, 59 M.J. 903, 906 (C.G.Ct.Crim.App. 2004) (citing R.C.M. 910(e) Discussion). A military judge's decision to accept a guilty plea is reviewed for an abuse of discretion. *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F. 1996). A military judge abuses this discretion if he fails to obtain from the accused an adequate factual basis to support the plea. *Inabinette*, 66 M.J. at 322. Also, a ruling based on an erroneous view of the law constitutes an abuse of discretion. *Id*.

The elements of the offense alleged in Charge II, Specification 31 were correctly set forth by the military judge as follows:

> That from 17 to 21 April 2006, at or near Rhinebeck, New York, you knowingly used the Internet to attempt to persuade and entice an individual using the Internet chat name "jjessiegirll", who was under the age of 18, to engage in sexual activity as charged;
>
> Second, that you believed that such individual was less than 18 years of age;
>
> Third, that if the sexual activity had occurred you could have been charged with a criminal offense under Article 120, UCMJ;
>
> Fourth, that you acted knowingly, willfully and wrongfully;

Fifth, Section 2422(b) of Title 18 U.S. Code was in existence; and

Sixth, that under the circumstances, your conduct was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

[There are definitions that apply.]

Okay, an act is wrongful if done without legal justification or excuse.

An act is done knowingly if done voluntarily and intentionally and not because of a mistake or accident or other innocent reasons.

It is not necessary for the individual to be, in fact, . . . less than 18 years of age, but it is necessary that you believed such individual to be under that age.

It is also not necessary for the individual to actually be persuaded or enticed to engage in sexual activity, but it is necessary that you intended to engage in some form of unlawful sexual activity with the individual and knowingly and willfully took some action that was a substantial step toward bringing about or engaging in that sexual activity.

Conduct prejudicial to good order and discipline is conduct which causes a reasonably direct and obvious injury to good order and discipline. Service-discrediting conduct is conduct which tends to harm the reputation of the service or lower it in public esteem.

Okay, now back to the elements. It is also necessary that, if the intended sexual activity had occurred, you could have been charged with a criminal offense of carnal knowledge under Article 120 of the UCMJ, as it existed at the time. In order to be guilty of carnal knowledge, all of the following must be true:

That at the proposed time and place, you committed an act of sexual intercourse with with "jjessiegirll";

That "jjessiegirll" was not your wife; and

That at the time of the proposed act of sexual intercourse, "jjessiegirll" was under 16 years of age.

(R. at 145-47.)

5

The elements of the offense alleged in Charge II, Specification 32 were set forth by the military judge similarly, substituting the moniker "liberta_della_guerra" for "jjessiegirll" and sodomy under Article 125 for carnal knowledge under Article 120.  (R. at 156-57.)

Concerning Specification 31, Appellant acknowledged that he understood the elements and definitions and understood that, by his guilty plea, he admitted that they accurately described what happened; he further admitted that the elements, in fact, accurately described what happened.  (R. at 147.)  The issue is whether there is a factual basis for his plea to this offense.  Prosecution Exhibit 3 contains electronic conversations ("chats") pertaining to the offenses; pages 22/102 – 31/102 of Prosecution Exhibit 3 are the chats with "jjessiegirll," the individual identified in Specification 31.

In a chat in December 2005, Appellant proposes to have intercourse with "jjessiegirll" when he comes home, flying into Albany, and she seems receptive.  (Prosecution Ex. 3 at 22/102.)  In a chat in January 2006, she proposes that he come to her house for intercourse when he flies in, and he promises to do so.  (Prosecution Ex. 3 at 23/102.)  In a chat in March 2006, he reminds her of the plan to have intercourse when he gets home, and she invites him to do so "anytime u want."  (Prosecution Ex. 3 at 24/102.)  These chats set the context for later chats when he is at home in New York State.

In a chat on 17 April 2006, he asks for her address, indicating that he would be coming from Kingston.  She reaffirms her desire to have intercourse, and he asks for her address again.  However, she does not respond further that day.  (Prosecution Ex. 3 at 26/102.)

In a chat on 18 April 2006, he expresses a desire to have intercourse, she responds in kind, and he asks for directions.  Later he asks if she wants to have intercourse, she responds positively, and he points out that she hasn't given her address.  He asks for her address again, but she expresses concern for "mom finding out."  He tries to reassure her and asks for her address again, but she does not respond further that day.  (Prosecution Ex. 3 at 27/102.)

In a chat on 21 April 2006, they both indicate that they want to have intercourse. He indicates that he goes back to California "today" and seeks her address so that he can go to her. She indicates that she is at school, and the conversation goes in a different direction.

During the providence inquiry, Appellant pointed out that the purpose of his asking for her address was to meet, and that getting the address would lead to the sexual activity. (R. at 148-50.)

Appellant now argues that the failure to arrange an actual rendezvous constitutes a failure to take a substantial step. However, the failure to arrange a rendezvous was not for lack of effort on his part. In the circumstances, obtaining her address was the critical and essential step to arranging a rendezvous. We consider his repeated request for her address, given the context established by the explicit chats, a substantial step. *See United States v. Lee*, 603 F.3d 904, 915 (11th Cir. 2010); *United States v. Dwinells*, 508 F.3d 63, 73 (1st Cir. 2007); *United States v. Goetzke*, 494 F.3d 1231, 1237 (9th Cir. 2007); *United States v. Thomas*, 410 F.3d 1235, 1246 (10th Cir. 2005); *United States v. Bailey*, 228 F.3d 637, 640 (6th Cir. 2000). We find the military judge did not abuse his discretion in accepting Appellant's guilty plea to Specification 31; we see no substantial basis to question that plea.

Concerning Specification 32, as with Specification 31, Appellant acknowledged that he understood the elements and definitions and understood that, by his guilty plea, he admitted that they accurately described what happened; he further admitted that the elements, in fact, accurately described what happened. (R. at 158.) Again, the issue is whether there is a factual basis for his plea to this offense. Pages 1/102 – 21/102 of Prosecution Exhibit 3 are the chats with "liberta_della_guerra," the individual identified in Specification 32.

In a chat on 17 April 2006, a Monday, Appellant observes that "liberta_della_guerra" is in Massachusetts while he is in New York until Friday; he offers to take a road trip. (Prosecution Ex. 3 at 1/102.) When she indicates that oral sex is a hobby for her, he invites her to engage in it with him and apparently transmits an image of his genitals, to which she expresses approval and indicates that she would like to engage in oral sex with him. (Prosecution Ex. 3 at 3/102.) He

then invites her to come to his location "like tonight or [tomorrow]," or offers in the alternative to drive to her location. (*Id.*) He suggests that she take a train and he will help pay for it. (Prosecution Ex. 3 at 4/102.) He also gives her two telephone numbers at which she can call him. (Prosecution Ex. 3 at 4/102, 8/102.) At one point, the following exchange occurs:

Appellant (A): so do u think u could come down here

liberta_della_guerra (ldg): why not

A: how u gonna get here

ldg: i have my ways

A: i just thought it would be easier u know ur parents are always home mine arent

A: u know what I mean

ldg: yea

A: how early could u get down here

ldg: idk

(Prosecution Ex. 3 at 8/102.)

In a chat the next day, after it appears they have talked on the phone, he urges her repeatedly to "get here." (Prosecution Ex. 3 at 12/102 - 14/102.) He continues his importuning on the following two days. (Prosecution Ex. 3 at 19/102 - 20/102.)

These chats, like those supporting Specification 31, reflect Appellant's efforts to arrange a rendezvous. In this instance, he mostly aims to have "liberta_della_guerra" travel to his location. This gives his efforts with respect to Specification 32 a vague air compared with those relating to Specification 31, but they do not look like fantasies, as Appellant now argues. In the exchange quoted above, as soon as he received a positive response to his suggestion for her to travel, he attempted to pin down the details, until her vague response conveyed that no details were to be had. We consider his efforts to arrange a rendezvous, given the context, a substantial

step.[3]  As with Specification 31, we find the military judge did not abuse his discretion in accepting Appellant's guilty plea to Specification 32; we see no substantial basis to question that plea.[4]

### Providence of plea to Charge II Specification 30

Appellant raises a novel argument concerning one of the specifications under Article 134, UCMJ, that alleges a violation of 18 U.S.C. § 2422(b).  As already noted, that statute criminalizes use of a means of interstate commerce to attempt to persuade and entice an individual who has not attained the age of 18 years to engage in unlawful sexual activity.  Charge II specification 30 alleges that the sexual activity is made unlawful by Article 125, UCMJ.  Appellant argues in essence that because the term "minor" was used in a specification that invokes Article 125, in which the age of majority is 16, and the individual in question was 17 years old and is therefore a minor with respect to 18 U.S.C. § 2422(b) but not with respect to Article 125, the resulting confusion makes his plea to the specification improvident.[5]  We reject this argument.  The military judge's explanation of the elements of the offense was correct and not confusing.  (R. at 129-30.)  We see no substantial basis to question the guilty plea to Specification 30.

Appellant also argues that the specification runs afoul of *United States v. Williams*, 327 U.S. 711 (1946).  *Williams* interpreted the Assimilative Crimes Act, now codified as 18 U.S.C. § 13.  It has no application to this case, which does not involve the Assimilative Crimes Act.  We know of no case, and Appellant does not cite any case, holding that 18 U.S.C. § 2422(b) cannot be used under Article 134 for an individual who has attained the age of 16 but has not attained the age of 18.

---

[3] *United States v. Gladish*, 536 F.3d 646 (7th Cir. 2008), is distinguished by the intertwined issue of the defense's expert witness, whose expected testimony that the defendant in that case was unlikely to act on his expressed intent was barred by the trial judge.

[4] We note that the military judge considered Specifications 24 and 32 as one for sentencing purposes, so this specification did not add to Appellant's sentence.  (R. at 265-66.)

[5] Appellant acknowledges that sodomy, the subject of Article 125, can be charged between consenting adults.  He does not claim that the activity would not be unlawful under *Lawrence v. Texas*, 539 U.S. 558 (2003), perhaps because the proposed sexual activity would have involved two people in addition to Appellant.  (Prosecution Ex. 3 at 68/102.)

Appellant also complains that by charging him with a violation of 18 U.S.C. § 2422(b) instead of Article 125, UCMJ, the Government exposed him to a maximum of thirty years of confinement instead of a maximum of five years under Article 125. This complaint is moot, because the military judge considered the maximum sentence for this specification to be five years. (R. at 31.)

## Post-trial delay

Appellant urges us to grant meaningful sentence relief on account of unreasonable post-trial delay.

The original sentence was confinement for sixty-five months, reduction to E-1, and a dishonorable discharge. In accordance with the pretrial agreement, the Convening Authority approved the sentence and suspended confinement in excess of thirty months for twelve months after release from confinement. He was credited with 341 days of pretrial confinement.

Processing of the record of trial (record or ROT) took place according to the following chronology. This chronology is taken from the memorandum dated 16 November 2009 forwarding the record to Coast Guard Headquarters (CGHQ)[6] and from the ancillary documents attached to the record.

| Date | Action | Days elapsed |
|------|--------|--------------|
| 18 Feb 09 | Sentence adjudged | 0 |
| 17 Mar 09 | Trial counsel received notice of discovery failure | 27 |
| 04 Apr 09 | ROT received by trial counsel from transcriptionist | 45 |
| 06 Apr 09 | Defense counsel submitted clemency request | 47 |
| 13 Apr 09 | Trial counsel sent new materials to Defense | 54 |
| 22 Apr 09 | Trial counsel completed examination of ROT | 63 |
| 15 May 09 | Trial counsel notified military judge of discovery issue | 86 |
| 06 Jun 09 | Military judge issued order re discovery | 108 |
| 20 Jul 09 | Discovery issue resolved; ROT authenticated | 152 |
| 29 Jul 09 | Authenticated ROT received by trial counsel | 161 |
| 03 Sep 09 | Staff Judge Advocate's Recommendation (SJAR) | 197 |

---

[6] The Coast Guard Military Justice Manual requires an accounting for post-trial delay where more than 120 days elapsed between the date sentence was adjudged and the date of Convening Authority action. Paragraph 5.F.4 of COMDTINST M5810.1D dated 17 August 2000.

| 03 Sep 09 | SJAR & authenticated ROT sent to defense counsel | 197 |
| 30 Sep 09 | Further clemency materials received from Defense | 224 |
| 14 Oct 09 | SJAR addendum | 238 |
| 20 Oct 09 | Convening Authority action | 244 |
| 16 Nov 09 | Memorandum forwarding ROT to CGHQ | 271 |

The record was referred to this Court on 16 December 2009, fifty-seven days after the Convening Authority's action.

Notable periods of routine post-trial processing are forty-five days taken to transcribe the record (for a 365-page transcript), forty-five days between authentication and SJAR, and twenty-seven days between the Convening Authority's action and sending the record to Headquarters. The extraordinary post-trial discovery issue took 125 days to resolve, with the first external action taken twenty-seven days after Trial Counsel became aware of it. The Memorandum forwarding the record gives no explanation for these delays.

The Court of Appeals for the Armed Forces (CAAF) applies "a presumption of unreasonable delay that will serve to trigger the *Barker* four-factor analysis where the action of the convening authority is not taken within 120 days of the completion of trial [and] where the record of trial is not docketed by the service Court of Criminal Appeals within thirty days of the convening authority's action." *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). The "*Barker* four-factor analysis" comprises consideration of the following four factors to determine whether post-trial delay constitutes a due process violation: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

The delays in this case are sufficient to raise the presumption of unreasonable delay, potentially constituting a due process violation. The Convening Authority's action was delayed 124 days beyond the 120-day period prescribed by *Moreno* for the convening authority's action, and twenty-seven days beyond the 30-day period prescribed for referral to this Court.

The post-trial discovery issue may constitute a case-specific justification for some delay as contemplated by CAAF in *Moreno*. ("Some cases will present specific circumstances

warranting additional time, thus making those periods reasonable upon assessment of the *Barker* factors." *Moreno*, 63 M.J. at 143.) It appears that the issue resulted from the misplacing by the Coast Guard Investigative Service (CGIS) of investigative records pertaining to Appellant's case until after trial. We are inclined to think that the resulting delay, which is attributable to some degree of government mismanagement, cannot be considered entirely reasonable. We also view the amount of time taken to resolve the issue as not obviously reasonable in itself, and there are no specific reasons given for that amount of time. We conclude that the first and second *Barker* factors weigh against the Government.

Appellant did not assert the right to timely review before the Convening Authority, although he did complain about the delay in Convening Authority action in his final clemency submission. The Convening Authority took action twenty days later. The third *Barker* factor does not weigh against the Government.

As to the fourth factor, Appellant claims prejudice in that he was eligible for parole, in accordance with SECNAVINST 5815.3J, Department of the Navy Clemency and Parole Systems,[7] well before the Convening Authority acted, but the Parole Board would not consider his case until the Convening Authority had acted.

According to Appellant's affidavit dated 16 February 2010, attached to the record as Appendix C pursuant to his motion, he was confined at Naval Consolidated Brig Miramar both before and after trial. He submitted his parole and clemency request package in April 2009, two months after the trial. However, the Convening Authority's action, dated 20 October 2009, did not reach the brig or the Clemency and Parole Board (Board) until January 2010. Appellant's release date was to be 28 February 2010.

The Board's letter dated 19 February 2010, attached to the record as Appendix E pursuant to Appellant's motion, states that the Board denied Appellant parole on 17 February, and directs Mandatory Supervised Release at Appellant's minimum release date.

---

[7] Extracts from this directive were attached to the record as Appendix A, pursuant to Appellant's motion.

Appellant claims that the Board denied parole because his release date was at hand and he would be placed on Mandatory Supervised Release, rendering the parole option moot. Apparently Appellant wants us to infer that if his package had been considered sooner, he would have been granted parole and released sooner. This is speculative. Mere speculation is not enough. *United States v. Gosser*, 64 M.J. 93 (C.A.A.F. 2006) (quoting *Moreno*, 63 M.J. at 140-141). Appellant has not established prejudice.

Although "no single factor [is] required to find that post-trial delay constitutes a due process violation," *Moreno*, 63 M.J. at 136, in the absence of prejudice the other factors must be very weighty against the Government to warrant a due process violation finding, the delay being "so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 361-62 (C.A.A.F. 2006). The convening authority's action in *Toohey* took place 644 days after the date of sentence, and the Court of Criminal Appeals issued its decision 2240 days (more than six years) after the date of sentence. By contrast, the delays in our case are not egregious. In the absence of prejudice, we find no due process violation.

We turn now to Appellant's argument that we should grant sentence relief under *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002), which held that we may grant relief for excessive post-trial delay without a showing of prejudice. *Id.* at 224. Upon finding unreasonable and unexplained post-trial delay, this Court may consider such delay, along with all the other facts and circumstances, in exercising its responsibilities under Article 66(c), UCMJ. *Id.* We have granted such relief in several cases, most recently in *United States v. Medina*, 69 M.J. 637 (C.G.Ct.Crim.App. 2010), and before that in *United States v. Greene*, 64 M.J. 625 (C.G.Ct.Crim.App. 2007).

The Government contends that, of the 244 days between sentencing and the Convening Authority's action, 126 were taken up in resolution of what we referred to above as the post-trial discovery issue, and that unreasonableness should be measured from the completion of that process. We reject this argument, because that process was a consequence of a Government management failure, as we said before. And even if we decided to disregard a portion of the

period involved, there is no showing of the reasonableness of the whole period. We reject the Government's implication that reasonableness should be presumed in the absence of a showing of unreasonableness. Rather, in the absence of explanation, the 126-day period appears unreasonable. The most positive interpretation we can place on the process, with the very limited information the record provides, is that it was infected with bureaucratic lethargy.

Moreover, if we consider only the time it took to obtain a transcript and the time from authentication to the Convening Authority's action, we arrive at a total of 137 days. This ignores review of the record by the trial counsel and the military judge, which would both surely have added more than a day. Finally, it was not until twenty-seven days after the Convening Authority acted that the record was sent to the Judge Advocate General. In each post-trial period – the handling of the post-trial discovery issue, the normal processing from end of trial to Convening Authority's action, and the post-action handling – we find a clear lack of the institutional diligence required in post-trial matters, resulting in unreasonable delay. *See United States v. Holbrook*, 64 M.J. 553, 557 (C.G.Ct.Crim.App. 2007); *Greene*, 64 M.J. 625, 628. We will consider the unreasonable delay when conducting our sentence appropriateness review under Article 66, UCMJ.

## Deficient findings

We note that when findings were announced, there was no finding as to the sole specification under Additional Charge I. A guilty finding was announced as to Additional Charge I. (R. at 268.)

Article 53, UCMJ requires announcement of findings; Rule for Courts-Martial 922, Manual for Courts-Martial, United States (2008 ed.) requires that the announcement take place in the presence of all parties. It is understood that this is to be done in open court. In this case, the military judge failed to make the required announcement. However, where the accused pleads guilty, the plea is equivalent to conviction, once it has been determined to be providently made. There is no prejudice to an accused from the failure to enter a finding to a specification to which the accused has pleaded guilty, especially where it is the sole specification under the charge. *United States v. Naputi*, 68 M.J. 538, 539 (C.G.Ct.Crim.App. 2009) (citing *United States v.*

14

*Barnes*, 50 C.M.R. 625, 629 (N.C.M.R. 1975), and *United States v. Brumbaugh*, 26 C.M.R. 649 (A.B.R. 1958)).  Appellant suffered no prejudice from the failure to announce a finding on that specification.  Nevertheless, we urge military judges and trial counsels to ensure that complete findings are announced in all cases.

## Decision

We have reviewed the record in accordance with Article 66, UCMJ.  Upon such review, the findings are determined to be correct in law and fact and, on the basis of the entire record, should be approved.  Accordingly, the findings of guilty are affirmed.  In view of our finding of unreasonable post-trial delay, only so much of the sentence as provides for sixty months confinement (with confinement in excess of thirty months suspended for twelve months after release from confinement), reduction to E-1, and a dishonorable discharge is affirmed.

Judges LODGE & TOUSLEY concur.



For the Court,


John T. Ure
Deputy Clerk of the Court

15